FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

20 MAY 20  PM 12: 27

CLERK_____
SO. DIST OF GA.

DEON MCKIE,                        *
                                   *
        Plaintiff,                 *
                                   *
        v.                         *        CV 119-097
                                   *
BRIDGECREST CREDIT COMPANY,        *
LLC, a Foreign Limited             *
Liability Company d/b/a GO         *
FINANCIAL, and SUMMIT              *
FINANCIAL CORP, a Foreign          *
Corporation,                       *
                                   *
        Defendants.                *

---

**O R D E R**

---

Before the Court is Defendant Bridgecrest Credit Company,
LLC's ("Defendant Bridgecrest") unopposed motion to compel
arbitration and stay this matter pending arbitration.[1]  (Doc. 4.)
For the following reasons, Defendant Bridgecrest's motion is
**GRANTED**.

---

[1] Although Defendant Bridgecrest labels its motion as a "Motion to Dismiss[]
and in the Alternative[,] Compel Arbitration and Stay Proceedings," Defendant
Bridgecrest omits argument as to why the case should be dismissed, focusing,
instead, on its alternative argument.  (See generally Mot. to Compel
Arbitration, Doc. 4.) Consequently, the Court refers to Defendant Bridgecrest's
motion as a motion to compel arbitration.

## I. BACKGROUND

### A. Plaintiff's Connection with Defendant Bridgecrest

Plaintiff purchased a vehicle on September 13, 2017, from Carvana. (Haddad Decl., Doc. 5, ¶ 3.) In connection therewith, Plaintiff entered into three agreements: the Retail Installment Contract and Security Agreement (Doc. 5-1), the Retail Purchase Agreement (Doc. 5-2) (collectively, "Contract"), and the Arbitration Agreement[2] (Doc. 5-3). Defendant "Bridgecrest . . . is the servicer of the loan set forth in the Retail Installment Contract [and Security Agreement]. Bridgecrest . . . services Plaintiff's account, and Plaintiff's payments under the Contract are due to Bridgecrest." (Haddad Decl., ¶ 7.)

### B. Defendant Bridgecrest's Alleged Inaccurate Reporting

At one point, Plaintiff owed monthly payments to Defendant Bridgecrest, but at some point before late-2018 or early-2019, his obligation to make monthly payments to Defendant Bridgecrest ceased. (Compl., Doc. 1, ¶¶ 8-9, 11.) On January 14, 2019, however, "Plaintiff obtained his Equifax and Trans Union credit disclosures" and noticed that Defendant Bridgecrest furnished to credit reporting agencies, Equifax and Trans Union, information expressing that Plaintiff still owed a monthly payment. (Id.)

---

[2] The Court reserves further examination of the Arbitration Agreement for the discussion section, *infra*.

Plaintiff alleges Defendant Bridgecrest is inaccurately reporting to Equifax and Trans Union that Plaintiff owes a monthly payment of $661.00 and $512.00, respectively. (Id. ¶¶ 8-9.) Plaintiff disputed these monthly payments to Equifax and Trans Union on March 29, 2019, claiming those accounts were paid off and closed. (Id. ¶¶ 12-14.) "Equifax and Trans Union forwarded," and Defendant Bridgecrest received, "Plaintiff's consumer disputes." (Id. ¶¶ 15-16.)

According to Plaintiff, Defendant Bridgecrest "did not consult the Credit Reporting Resource Guide as part of its investigation of Plaintiff's dispute" and "verified to Equifax and Trans Union that its reporting of its . . . [t]radelines [was] accurate." (Id. ¶¶ 17-18.) Plaintiff never received the investigation results from Trans Union and Equifax. (Id. ¶¶ 19, 20.) On May 20, 2019, Plaintiff obtained his Equifax and Trans Union credit disclosures, which continued to report an outstanding monthly payment from Defendant Bridgecrest. (Id.)

## C. Defendant Bridgecrest's Alleged FCRA Violations

Plaintiff claims Defendant Bridgecrest negligently and willfully violated the Fair Credit Reporting Act ("FCRA"). (Id. ¶¶ 23-27, 30-33.) Specifically, Defendant Bridgecrest negligently and willfully failed to (1) conduct a proper investigation of Plaintiff's dispute, (2) review the information provided by the credit reporting agencies, and (3) direct the credit reporting

3

agencies to report a $0.00 monthly payment amount. (<u>Id.</u> ¶¶ 23-24, 30-31.)

As a "direct and proximate" result of these violations, Plaintiff asserts he suffered credit and emotional damages. (<u>Id.</u> ¶¶ 26, 32.)  Consequently, Plaintiff concludes that for negligent violations of the FCRA, Defendant Bridgecrest is liable "in an amount to be determined by the trier of fact together with reasonable attorneys' fees pursuant to 15 U.S.C. 1681o." (<u>Id.</u> ¶ 27.)  For willful violations of the FCRA, Defendant Bridgecrest is "liable to Plaintiff for either statutory damages or actual damages . . . in an amount to be determined by the trier of fact, together with an award of punitive damages in the amount to be determined by the trier of fact, as well as for reasonable attorneys' fees" under 15 U.S.C. § 1681n. (<u>Id.</u> ¶ 33.)

**D. Procedural Posture**

Plaintiff filed the present action on June 27, 2019. (<u>See generally</u> Compl.)  On September 9, 2019, Defendant Bridgecrest moved to compel arbitration and stay this case. (<u>See generally</u> Mot. to Compel.)  Plaintiff neglected to respond to the motion. (Notice by Def. Bridgecrest, Doc. 31.)  Defendant Bridgecrest's motion is now ripe for consideration.

4

## II. LEGAL STANDARD

There is an "emphatic federal policy in favor of arbitral dispute resolution." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985). The Federal Arbitration Act ("FAA") requires courts to "rigorously enforce agreements to arbitrate." Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1192 (11th Cir. 1995) (quoting Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987)). "[T]he party seeking to compel arbitration has the initial burden of 'producing the arbitration agreement and establishing the contractual relationship necessary to implicate the FAA and its provisions granting th[e] [c]ourt authority to dismiss or stay [the] [p]laintiff's cause of action and to compel arbitration.'" Compere v. Nusret Miami, LLC, 396 F. Supp. 3d 1194, 1199 (S.D. Fla. 2019) (citation omitted). If the party for arbitration meets its burden of production, the burden shifts to the party opposing arbitration to show why the court should not compel arbitration. Bhim v. Rent-A-Ctr., Inc., 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009). Here, Plaintiff fails to oppose the motion.

## III. DISCUSSION

The Court analyzes whether (A) the FAA governs the Arbitration Agreement, (B) the Arbitration Agreement is enforceable, (C) the Arbitration Agreement covers the current dispute, and (D) the Court

5

should stay Plaintiff's action against Defendant Bridgecrest pending arbitration.

## A. FAA

The FAA applies to agreements "evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has construed this language broadly, holding that Section Two's "involving commerce" language must be read to extend the Act's reach to the limits of Congress's Commerce Clause power. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 268, 277 (1995).

The Contract here implicates interstate commerce, and the FAA governs. The Retail Purchase Agreement incorporates by reference the Arbitration Agreement, and the Arbitration Agreement defines the applicable "Contract" as "the Retail Purchase Agreement . . . and/or the related Retail Installment Contract and Security Agreement." (Retail Purchase Agreement, at 3; Arbitration Agreement, at 1.) Thus, the Contract, which includes an agreement pertaining to the sale of a vehicle and a related loan, triggers the Arbitration Agreement. Plaintiff is a Georgia resident and "Bridgecrest is an Arizona [LLC]." (Compl., ¶ 5; Haddad Decl., ¶ 8.) Tarq Haddad, Defendant Bridgecrest's Director of Loan Servicing, appears to work in Tempe, Arizona, where he maintained and reviewed the documents related to the servicing of Plaintiff's loan. (Haddad Decl., at 3; see id. ¶¶ 1, 7, 8.) As such, the Court finds the Contract contemplates a transaction in

interstate commerce. See Jenkins v. First Am. Cash Adv. of Ga., LLC, 400 F.3d 868, 874-75 (11th Cir. 2005). Further, the Contract itself acknowledges that "[b]ecause the Contract involves a transaction in interstate commerce, the [FAA] governs this Agreement." (Arbitration Agreement, at 4); see Credit Acceptance Corp. v. Davisson, 644 F. Supp. 2d 948, 954 (N.D. Ohio 2009) (finding informative that "the Contract itself provides that the [FAA] governs this Arbitration Clause") (citation and internal quotation marks omitted).

## B. Validity of Arbitration Agreement

The Arbitration Agreement is valid under Georgia law, which is the applicable law given that the contract at issue here was executed in Georgia. (Retail Purchase Agreement, at 1; Retail Installment Contract and Security Agreement, at 1); See Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc., 468 F.3d 1322, 1325 (11th Cir. 2006); Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368 (11th Cir. 2005) ("[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists."). "Under Georgia law, a binding contract requires 'a definite offer and complete acceptance, for consideration.'" Shubert v. Scope Prods., Inc., No. 2:10-CV-00101-RWS, 2011 WL 3204677, at *2 (N.D. Ga. July 27, 2011) (quoting Moreno v. Strickland, 567 S.E.2d 90, 92 (Ga. Ct. App. 2002)).

Plaintiff and Carvana signed the Retail Purchase Agreement, Retail Installment Contract and Security Agreement, and Arbitration Agreement.[3] (Retail Purchase Agreement, at 3; Retail Installment Contract and Security Agreement, at 5; Arbitration Agreement, at 5.) Plaintiff acknowledged, directly above his signature in the Arbitration Agreement: **"BY SIGNING BELOW, YOU EXPRESSLY AGREE TO THE ABOVE AGREEMENT. THE AGREEMENT MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE. YOU ALSO ACKNOLWEDGE RECEIVING A COMPLETE COPY OF THIS AGREEENT."** (Arbitration Agreement, at 5 (emphasis in original).) The Arbitration Agreement afforded Plaintiff the right to reject it within thirty days, but the record contains no evidence or allegation that Plaintiff rejected the Arbitration Agreement. (Arbitration Agreement, at 2; Haddad Decl., ¶ 6.) The Court finds the Arbitration Agreement is valid.

## C. Applicability of Arbitration Agreement

Because the FAA creates a presumption in favor of arbitrability, Paladino v. Avnet Comput. Techs., Inc., 134 F.3d 1054, 1057 (11th Cir. 1998), any doubts concerning the scope of arbitral issues must be construed in favor of arbitration. Mitsubishi, 473 U.S. at 626. The Eleventh Circuit has held that if parties intend to exclude categories of claims from their

---

[3] In the next section, the Court determines whether Plaintiff's claims against Defendant Bridgecrest — a nonsignatory — are covered by the Arbitration Agreement.

arbitration agreement, the parties must clearly express such intent. Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000). In other words, issues will be deemed arbitrable unless it is clear that the arbitration agreement omits them. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 945 (1995).

The Arbitration Agreement allows either party to "decide to resolve [a dispute] by using arbitration" and covers "any claim, dispute o[]r controversy between you and us arising from or related to one or more of the following:

(a) The Contract.

(b) The vehicle or the sale of the vehicle.

* * *

(i) The collection of amounts you owe us.

(j) Any repossession, or replevin, of the vehicle." (Id. at 1, 2.) "Us," refers to, in part, "Carvana, [or] any purchaser, assignee or servicer of the [Retail Purchase Agreement and/or Retail Installment Contract and Security Agreement]." (Id. at 1.) "'Claim' has the broadest reasonable meaning. It includes claims of every kind of nature[,]" such as "statutory claims, contract claims, negligence and tort claims (including claims of fraud and other intentional torts)." (Id. at 2.) Furthermore, the Arbitration Agreement provides that "a dispute about validity, enforceability, coverage or scope of this Agreement . . . is for a court, and not an arbitrator[,] to decide." (Id.)

9

Defendant Bridgecrest elects arbitration of Plaintiff's claims against it. (See generally Mot. to Compel Arbitration.) These claims, according to Defendant Bridgecrest, "are for an arbitrator to decide because they arise from and relate to the Contract, the collection of amounts that Plaintiff owed for the Vehicle, and the Vehicle's pending repossession." (Id. at 5-6.) Although not a signatory to the Arbitration Agreement, Defendant Bridgecrest contends it is Carvana's assignee and the servicer of the Contract. (Id. at 3, 4.)

First, Defendant Bridgecrest is an assignee of Carvana and is servicing the loan under the Contract. See Credit Acceptance, 644 F. Supp. 2d at 956 (finding the Arbitration Agreement "applies equally to Seller and Seller's assignee"). Second, the Arbitration Agreement covers Plaintiff's statutory claims against Defendant Bridgecrest because the claims relate to the Contract, collection of the amount Plaintiff owes Defendant Bridgecrest under the Contract, and the impending repossession. See Bailey v. Wells Fargo Bank N.A. Inc., No. 1:14-cv-00989-CC, Doc. 16, at 12 (N.D. Ga. Aug. 26, 2014) (R. & R., adopted by Order, Doc. 20 (Oct. 2, 2014)) (finding the arbitration agreement in the vehicle sales contract covered the allegations that the bank "inaccurately reported to several credit bureaus" and "refused to correct th[o]se mistakes after [the] [p]laintiff provided information showing his payments were current" because those allegations "relate to the

parties' relationship and obligations" under the loan agreement).

Consequently, the Court finds the Arbitration Agreement applies to

Plaintiff's claims against Defendant Bridgecrest and Defendant

Bridgecrest elected arbitration.

## D. Status Pending Arbitration

Defendant Bridgecrest requests this case be stayed pending

arbitration. (Mot. to Compel Arbitration, at 12.) Plaintiff fails

to oppose Defendant Bridgecrest's request to stay.   The FAA

provides:

> If any suit or proceeding be brought in any of the courts
> of the United States upon any issue referable to
> arbitration under an agreement in writing for such
> arbitration, the court in which such suit is pending,
> upon being satisfied that the issue involved in such
> suit or proceeding is referable to arbitration under
> such an agreement, shall on application of one of the
> parties stay the trial of the action until such
> arbitration has been had in accordance with the terms of
> the agreement, providing the applicant for the stay is
> not in default in proceeding with such arbitration.

9 U.S.C. § 3.  Because the Court finds the claims arbitrable, the

Court **GRANTS** Defendant Bridgecrest's motion as to its request to

stay pending arbitration.

### IV. CONCLUSION

For the foregoing reasons, Defendant Bridgecrest's motion to

compel arbitration and stay this matter pending arbitration

(Doc. 4) is **GRANTED.  IT IS HEREBY ORDERED** that (1) Plaintiff and

Defendant Bridgecrest **SHALL ARBITRATE** all claims against Defendant

Bridgecrest, and (2) Plaintiff's action as against Defendant Bridgecrest is **STAYED** pending arbitration. Plaintiff and Defendant Bridgecrest **SHALL** file a joint status report with the Court every **NINETY (90) DAYS** until the arbitration has concluded.

    **ORDER ENTERED** at Augusta, Georgia, this _20th_ day of May, 2020.

                                                  _____
                                                  J. RANDAL HALL, CHIEF JUDGE
                                                  UNITED STATES DISTRICT COURT
                                                  SOUTHERN DISTRICT OF GEORGIA